IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>CHARLES G. HOLLMAN,<br>    Defendant. | Case No. 1:18-cr-10037-JBM-JEH-1 |

**Amended Report and Recommendation**

The District Judge referred the "disposition of the issue of restitution" to the undersigned for a Report and Recommendation. (Minute Entry, November 16, 2018); *See* 18 U.S.C. § 3664(d)(6). For the reasons set forth, *infra*, the Court finds that the Government has failed to meet its burden to demonstrate the victim's losses and, consequently, recommends that no order of restitution issue.

I.

The Defendant, Charles G. Hollman, pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). At sentencing, the parties agreed with the Court that, subsequent to when the Pre-Sentence Investigation Report was prepared, two victims, "Jenny" and "Tara," provided notice that they sought restitution. (Sentencing Transcript at p. 2). Due to the late notices regarding restitution, the parties were not prepared to address restitution at the sentencing hearing. *Id.* at pp. 2-3. The Court therefore set the matter for a restitution hearing after sentencing and referred the issue to the undersigned.

The Court then directed the parties to file memoranda setting forth their arguments on restitution. (Minute Entry, November 16, 2018). The Court also

directed the parties to state whether they believed "an evidentiary hearing [was] necessary for purposes of determining restitution, if any." *Id.*

On November 21, 2018, the Government filed its memorandum. It stated that it did "not believe that an evidentiary hearing [was] necessary for the purpose of determining restitution." (D. 24 at ECF p. 9).[1] It also stated that the victim in the "Tara" series is no longer seeking restitution, and the victim in the "Jenny" series seeks $3,000. *Id.* at p. 5. The Government also asserted in a footnote that legislation was pending in Congress which, if passed into law, would require the Defendant to pay a minimum of $3,000 in restitution to his victim. *Id.* at p. 5, n. 2. Finally, the Government argued that the factors set forth by the United States Supreme Court in *Paroline v. United States*, 134 S. Ct. 1710 (2014), supported restitution in the amount of $3,000. The Government attached two exhibits to its memorandum—a victim impact statement from "Jenny" and a chart listing eleven defendants who were convicted of either receiving or possessing images of "Jenny" and ordered to pay her restitution. (D. 24-1).

In the Defendant's memorandum, he agreed with the Government that an evidentiary hearing was not necessary but asked the Court to consider his "age upon release from prison and his very limited ability to pay any amount of restitution." (D. 25).

On January 7, 2019, this Court heard argument on the restitution issue, which consisted of a reiteration of the positions taken in the parties' memoranda. Neither party presented evidence at the hearing.

---

[1] References to the Docket are cited as "D. ___ at ECF p. ___."

## II.
### A.

Title 18 U.S.C. § 2259(a) provides that a district court "shall order restitution for any offense" under Chapter 110 of that title, "which covers a number of offenses involving the sexual exploitation of children and child pornography in particular." *Paroline*, 134 S. Ct. at 1718. Subparagraph (b)(1) provides that "[t]he order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses. . ." 18 U.S.C. § 2259(b)(1). The section provides that the "full amount of the victim's losses" includes any costs incurred by the victim for:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred, and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A)-(F) (effective through December 6, 2018); 18 U.S.C. § 2259(c)(2)(A)-(F) (effective December 7, 2018) (the deletion of "as a proximate result of the offense" in subsection (F) being the only amendment made to subsections (A)-(F) by the "Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018" (the "Act"), which became law on December 7, 2018).

The issuance of a §2259 restitution order is "mandatory," and a court cannot decline to issue such an order because of the "economic circumstances of the defendant." *Id.* at (c). Finally, the restitution order "shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A," which, like § 2259(b)(1)(B)(3), also provides that an order of restitution be

entered "without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).

Critically to the disposition in this case, "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. *The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on the attorney for the Government*." 18 U.S.C. § 3664(e) (emphasis added).

**B.**

As the Supreme Court's decision in *Paroline* demonstrates, courts have struggled with determining the amount of restitution in cases where a defendant is convicted of possessing child pornography images which have been circulated on the Internet. *See generally, Paroline*, 134 S. Ct. at 1727-30. The Court addressed some of the issues that have vexed courts in cases like the one at Bar. For example, it held that a defendant's possession of child pornography has a legally sufficient causal connection to the harm suffered by the victim due to the trafficking in his or her images to allow for an award of restitution. *Id.* at 1727. The Court also addressed how a court should calculate the relative portion of the victim's aggregate loss for which any one individual possessor is responsible. *Id.* at 1722. The Court stated, "It is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole," an amount which the Court referred to as "a victim's general losses." *Id.* The more difficult question is "determining the 'full amount' of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim." *Id.* The Court then addressed how

a court assigns the relative portion of "general losses" to a defendant for his role in producing those losses of the victim.

The Court rejected the argument that every defendant should be responsible for the entirety of a victim's general losses. *Id.* at 1725-26. Instead, the Court held that where a victim "has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant," then a court should "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. Such an amount would be neither "severe" nor "nominal or token" and be based upon a court's consideration of several factors. *Id.* As the "starting point," a court should calculate the victim's general losses and then determine the defendant's relative role in producing those losses by looking to factors such as:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 1728.

Applying this method outlined in *Paroline*, the Seventh Circuit in *United States v. Sainz*, 827 F.3d 602, 605 (7th Cir. 2016), affirmed the district court's restitution order, which required the defendant to pay his victim $8,387.43. The court noted that the district court followed the "same procedure" as set forth in *Paroline* by "first calculating the total loss and then determining what fraction of

that loss should be attributed to the defendant." *Id.* at 606. Specifically, using what the Seventh Circuit described as the "1/n method," the district court found the victim's total losses and determined that the defendant was the 136th offender who had been prosecuted and ordered to pay the victim restitution. *Id.* at 605. It then divided the "total loss by 136" to arrive at the defendant's relative share of that total amount. *Id.* The Court of Appeals found the amount of restitution to be "substantively reasonable" and "neither severe nor trivial." *Id.* at 606.

### III.
### A.

Section 2259, *Paroline*, and *Sainz*, make clear that the prerequisite for determining a defendant's relative share of a victim's total losses is first determining what the victim's total losses are. Without a figure for the total losses, it is impossible to calculate a relative share of that unknown number. *Paroline* and *Sainz* addressed how to calculate a defendant's *relative* responsibility for the *total* loss. In both of those cases, the courts had a total loss figure from which to calculate the defendant's relative share of that loss—$3.4 million in *Paroline* and $1.14 million in *Sainz*. *Paroline*, 134 S. Ct. at 1718; *Sainz*, 827 F.3d at 605 (extrapolating this figure by multiplying the defendant's 1/136 share, $8,387.43, by 136). The sources to which a court looks for calculating this total loss are quite clear; they are set out at § 2259(c)(2)(A)-(F), as set forth in both versions of the statute. For all the difficulty identified by courts in calculating a defendant's relevant share of a victim's total losses, the information used to calculate a victim's total losses are relatively concrete, easily determinable, and routinely calculated by courts in all manner of cases involving restitution. *See, e.g., United States v. Donaby*, 349 F.3d 1046 (7th Cir. 2014) (restitution calculated in bank robbery case); *United States v. Breshers*, 684 F. 3d 699 (7th Cir. 2012) (restitution calculated in a kidnapping case); *United States v. Allen*, 529 F.3d 390 (7th Cir. 2008) (restitution calculated in a "frauds

and swindles" case); *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2007) (restitution calculated in a Racketeer Influenced and Corrupt Organizations Act case); *see also, Paroline*, 134 S. Ct. at 1728 (noting that it is "neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution," to make determinations that "cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment").

Unfortunately, the Government in this case provided the Court with no evidence which relates to *any* of the (A) through (F) factors. Although the Government submitted a victim impact statement (D. 24-1), which certainly demonstrates the suffering "Jenny" endures because of the trafficking in her images, that statement does not specifically address any of the factors set forth in the statute. Nor does the Government even attempt to argue what the victim's total losses are from the trafficking in her images; it ignores the question entirely. There is no evidence regarding medical services; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and child care expenses; lost income; or attorney's fees, as set forth in § 2259.[2]

The Government has provided this Court with nothing upon which it can determine "Jenny's" total, aggregate, or general losses. The Government has therefore failed to meet its "burden of demonstrating the amount of loss sustained by the victim as a result of the offense." 18 U.S.C. § 3664(e). Although it argues

---

[2] Although neither docketed on the record nor submitted into evidence by the Government, the undersigned discovered a letter in the possession of the United States Probation Office, which "Jenny's" counsel sent to the United States Attorney's Office. The Court has attached that letter under seal to this Report and Recommendation as Exhibit 1. Unfortunately, the letter provides no facts, proposed numbers, or information which would assist the Court in calculating the victim's total losses. Instead, "Jenny's" counsel states that they are "in the process of preparing a full accounting of her losses" but are "requesting restitution now—before these materials are completed—in order to pay for the psychologists and economist she needs to fully substantiate her losses." Exhibit 1. Given that counsel also asserts they represented a victim in the *Paroline* case, one would expect they would understand that a court cannot determine restitution under the approach set forth in *Paroline* without first having evidence from which it can determine the victim's total losses.

that the *Paroline* factors support a restitution order of $3,000, the argument is nonsensical. The *Paroline* factors are used by a court to calculate a defendant's *relative* share of the total losses; a court cannot reach the *Paroline* analysis without first calculating the total losses. On that "total loss" question, the Government has provided no evidence, argument, or suggestion which would allow the Court to determine what that number should be.[3]

**B.**

The amendments to § 2259, which apply to the case at Bar, do not alter this conclusion. *See United States v. Newman*, 144 F.3d 531, 537 (7th Cir. 1998) (holding that the *Ex Post Facto* Clause does not prohibit applying a restitution statute enacted after a defendant's offense conduct even though it operates to his detriment because restitution is not punishment).

Before the Court held the restitution hearing on January 7, 2019, the "Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. Law 115−299 (2018), added the following paragraphs to § 2259:

> (2) RESTITUTION FOR TRAFFICKING IN CHILD PORNOGRAPHY.—If the defendant was convicted of trafficking in child pornography, the court shall order restitution under this section in an amount to be determined by the court as follows:
>
>> (A) DETERMINING THE FULL AMOUNT OF A VICTIM'S LOSSES.—The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>>
>> (B) DETERMINING A RESTITUTION AMOUNT.— After completing the determination required under

---

[3] The Government asserts in a footnote to its memorandum that "[n]ew counsel for Victim Jenny reports that the firm is in the process of preparing a full accounting of losses." (D. 24 at ECF p. 5). That full accounting is what the Court needs now to calculate restitution; it is of no use that it is in the "process" of being prepared.

>   subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.
>
>   (C) TERMINATION OF PAYMENT.—A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

Pub. Law 115—299 § 3(a); 18 U.S.C. § 2559(b)(2) (effective December 7, 2018).[4]

These paragraphs set forth very specific procedures for calculating restitution. First, "[t]he court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim." Pub. Law. 115-299 § 3(a)(4), para. (2)(A); 18 U.S.C. § 2259(b)(2)(A) (effective December 7, 2018). In other words, a court must first determine the victim's total losses in general, without regard to the particular defendant's relative role in those total losses—just as required by the statute and *Paroline* prior to the amendments. This figure would be akin to the total loss figures of $3.4 million in *Paroline* and $1.14 million in *Sainz*, and, as discussed, *supra*, which cannot be calculated in this case due to a lack of evidence.

---

[4]The Act inserted these paragraphs into the statute as subparagraph (2), while striking subparagraph (3) and re-designating the previous subparagraph (2) as subparagraph (3).

9

Second, "[a]fter completing the determination *required* under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000." Pub. Law 115-299 § 3(a)(4), para. (2)(B); 18 U.S.C. § 2259(b)(2)(B) (effective December 7, 2018) (emphasis added).

What these two new subparagraphs make clear is that the minimum, $3,000, cannot be imposed automatically. Before a court can order the minimum restitution amount, it "shall" first perform the "required" task of calculating the victim's total loss." Pub. Law 115-299 § 3(a)(4), para. (2)(A) & (B); 18 U.S.C. § 2259(b)(2)(A) & (B) (effective December 7, 2018). The statute's use of these obligatory terms in subparagraphs (A) and (B) make plain that a court may not skip over this crucial first step of calculating the victim's total losses, just as a court could not do so prior to the amendments when applying the process outlined in *Paroline*.

Subparagraph (C) serves to confirm that the $3,000 set forth in subparagraph (B) cannot be automatically imposed. That subparagraph provides that "[a] victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses." Pub. Law 115-299 § 3(a)(4), para. (2)(C); 18 U.S.C. § 2259(b)(2)(C) (effective December 7, 2018). Moreover, once the victim has "received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated." *Id.* In other words, if a hypothetical victim had total losses of $1 million and recovered $999,999 in restitution from previously convicted defendants, then the next defendant by operation of subparagraph (C) could only be ordered to pay $1.00 in restitution—not a minimum of $3,000.

10

This hypothetical also demonstrates the necessity of a court first calculating a victim's total losses under subparagraph (A) before it can move to subparagraph (B) and impose either a relative portion of restitution or the $3,000 minimum. If courts never calculated a victim's total losses, then they would never know if, pursuant to subparagraph (C), a victim's total aggregate recovery exceeded the full amount of the victim's losses. A court cannot comply with subparagraph (C)'s prohibition on excess recoveries without first knowing what the total losses are as required by subparagraph (A) and how a restitution order for the defendant's relative role under subsection (B) will affect that total recovery.

In other words, the amendments to § 2259 made by the Act do not alter the Court's conclusion that the Government's failure to demonstrate "Jenny's" total losses precludes the Court from ordering restitution.

### C.

The Court has also, *sua sponte*, looked to other cases to find a source for "Jenny's" total losses, given the Government's and "Jenny's" counsel's failure to provide the Court with any facts necessary to determine her total losses. The Court examined dockets in the cases where an order of restitution to "Jenny" was entered, as provided by the Government in its exhibit to its memorandum. (D. 24-1 at ECF pp. 2). However, in the eleven cases that courts ordered defendants to pay "Jenny" restitution, none calculated "Jenny's" total losses. Specifically, in nine of those cases, the defendants either agreed, stipulated, or did not object to the amount of restitution, and the record in those cases makes no reference to "Jenny's" total losses. *See United States v. Howard*, Case No. 15-cr-2058 (D.Ariz.), D. 39 at ECF p. 4; *United States v. Montano*, Case No. 16-cr-642 (D.Ariz.), D. 33 at ECF p. 4; *United States v. Mootz*, Case. No. 1:17-cr-0053 (E.D.Cal.), D. 42; *United States v. McLaughlin*, Case No. 15-cr-00052 (S.D. Iowa), D. 60; *United States v. Dotson*, Case No. 14-cr-00145 (E.D. Mo.), D. 54; *United States v. Searl*, Case No. 14-cr-00311

(E.D.N.Y.), D. 24 at ECF p. 12; *United States v. Ilich*, Case No. 16-cr-00044 (W.D. Pa.), D. 42; *United States v. Clotfelter*, Case No. 16-cr-63 (E.D. Tenn.), D. 32; *United States v. McMullen*, Case No. 4:16-cr-032 (N.D. Tex.), D. 40. In the remaining two cases, the record is devoid of anything concerning "Jenny's" total losses or how the district courts calculated the defendants' relative portion of restitution. *United States v. Bryan*, Case No. 4:17-cr-00008 (S.D. Ga.); *United States v. Nesbit*, Case No. 15-cr-00052 (N.D. Ohio). Finally, this Court's Westlaw search of all federal cases involving restitution to "Jenny" produced no results. There is, consequently, nothing this Court can use to calculate "Jenny's" total losses, and it therefore cannot calculate the Defendant's relative share of those unknown total losses. Thus, no order of restitution can enter.

### IV.

The result in this case is dictated by § 2259 and precedential authority outlining the methodology which a court must use when calculating restitution in a case like this, combined with the Government's failure to present evidence necessary for this Court to calculate "Jenny's" total losses. This outcome is unfortunate, for "Jenny" most certainly has substantial total losses from the crimes of which she is a victim, and this Defendant is most assuredly responsible for a relative share of those losses resulting from the harm done to her. However, an order of restitution cannot be arbitrary, *United States v. Brick*, 905 F.2d 1092 (7th Cir. 1990), and without any factual basis to determine "Jenny's" total losses, ordering restitution in an amount which must represent the Defendant's relative share of those unknown total losses would be arbitrary indeed.

The Government had ample opportunity to present this Court with evidence. Recognizing the dearth of evidence in the record, this Court specifically asked the parties if they believed an evidentiary hearing was necessary. The Government declined to present additional evidence at the hearing, both in its

memorandum and at the hearing. Given "Jenny's" counsel's representation that they were in the "process of preparing a full accounting of losses," the Government could have sought a continuance of the hearing on restitution until such time as that process was complete, but it did not. *See United States v. Bour*, 804 F.3d 880, 888 (7th Cir. 2015) (noting that the period for imposing restitution is designed to give victims timely relief and not to give defendants an absolute deadline after which they are freed from providing restitution).

As tempting as it is to give the Government yet another opportunity to present the evidence it should have already presented, the Government made a clear choice not to take advantage of the opportunities it has already been given. Nor can the Government claim that the recent passage of the Act excuses its failure to present evidence on "Jenny's" total losses, for even prior to the Act, a court was required to find total losses before calculating a defendant's relative share thereof. *See, Supra,* section III.A. At this point, the Government must be held to its burden of proof which, for all the reasons stated, *supra*, it has failed to meet.[5]

"Jenny" may, however, be eligible to obtain $35,000 from the Child Pornography Victims Reserve, created by the Act. Pub. Law 115–299 § 5(c); 18 U.S.C. § 2259B. Under this provision, "when a defendant is convicted of trafficking in child pornography, any victim of that trafficking in child pornography may choose to receive defined monetary assistance from the Child Pornography Victims Reserve . . ." 18 U.S.C. § 2259(d)(1)(A). To be eligible, a claimant must be found by the Court to be a "victim of the defendant who was convicted of trafficking in child pornography." *Id* at (B). If "the claimant then chooses to receive defined monetary assistance, the court shall order payment in accordance with subparagraph (D). *Id.* at (C). Finally, subparagraph (D) provides for payment of

---

[5] Given this Court's conclusion, there is no need to consider the Defendant's argument that the Court should consider the Defendant's age and economic circumstances when setting the amount of restitution.

13

$35,000 during the first calendar year after the provision's enactment. *Id.* at (D). It is undisputed that "Jenny" is a victim of the Defendant in this case, and she therefore need only inform the Court whether she chooses to receive defined monetary assistance before the Court must order payment from the reserve.

### V.

For all the reasons stated, *supra*, the undersigned finds that the Government failed to meet its burden to demonstrate the victim's losses and, consequently, recommends that no order of restitution issue. The undersigned also recommends that, if the District Judge adopts this Report and Recommendation, "Jenny's" counsel be informed thereof and given 30 days to provide the Court with notice of whether she chooses to receive defined monetary assistance. If she elects to receive such assistance, then either she or her counsel should certify in the notice to the Court that she has not "collected payment of restitution pursuant to [18 U.S.C. § 2259] in an amount greater than" $35,000. 18 U.S.C. § 2259(d)(3) (providing that a victim is ineligible for defined monetary assistance if he or she has collected more in restitution under § 2259 than the amount of the defined monetary assistance).

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered: January 14, 2019

s/Jonathan E. Hawley
U.S. Magistrate Judge